Will your argument next in the United States v. Dela Cruz, 15-4174. Good morning, Your Honors. My name is Louis Aydala and I represent Mr. Dela Cruz. Hold on one second. People come in and out. Okay, please proceed. May I proceed? Thank you. This is a situation in which the ultimate cooperator with the government, Mr. Velez, was a target of the government, thinking he was some big-time drug dealer. And over a period of months, they tried to get him to do something criminally, and they totally failed. They didn't walk away from it, but rather than, they came up with their second course of action, which is referred to as sting operation, which many of your colleagues across the country have criticized over the last few years. And what they did is they told him about multi-kilograms of cocaine and heroin coming up from Florida, and how he could rob them and garner so much money. And as they usually do in these cases, they make it so high so that the guidelines that apply are up in the sky, and mandatory minimums come into play. And of course, they told him during meetings that these were vicious people and violent people, and therefore he had to be armed, and that he couldn't do it by himself, but he had to recruit other people. And Mr. De La Cruz became involved because he lived out in Pennsylvania, knew Velez, and Mr. Velez, as is clear, knew that De La Cruz had family, lived in Inwood, his mother and father, and basically every week he would drive in to the city. And so he knew Velez had not only a car, but he had a license to drive, which Velez didn't have. So he got him to go along with him, and he had him present at some meetings with the government agents. And it's conceded by everyone, including the district court, that Velez is the one who did all the speaking. There's one issue that came up about some comment that De La Cruz had uttered. Now, as happens usually in our courts here, there's something that's worked out between counsel and the U.S. attorney. And the U.S. attorney's office determined that De La Cruz's position amongst all the men involved was the most minimal. And therefore, he and he alone, they offered him a plea agreement, which did not involve the drug. It was a Hobbs Act robbery, so there was no mandatory minimum. It came up with an agreement and stipulated a guideline and range. And the government and defense counsel worked out the elocution, which . . . Can I ask you just, when did you find out that the district court was going to consider this information about his role in the actual robbery and his drug dealing beforehand? That's when the . . . Let me just finish my question, okay? When did you find out that she was going to . . . that she was interested in acceptance of responsibility, as opposed to a sentencing factor? I think that occurred when the court sua sponte said, going to hold a Fatico hearing. Well, I've got her order in front of us, but it doesn't say why that she's doing that. She just said, I want to know Velez's basis for the statement that, quote . . . It says, what was the factual basis in the pre-sentence report for the statement, quote, Dela Cruz stated that they were going to harm the main target drug supplier. In other words, you objected to the PSR, paragraphs 19 and 30, and that was raised. That was . . . Wait, but when did you think, wow, you know, I can see that for . . . Because that isn't what was said. That was a complete misstatement. For months . . . No, I know. I'm not talking about . . . I'm just trying to figure out . . . It looked like everybody was taken by surprise . . . Yes. . . . at the sentencing, when she said, I'm denying acceptance of responsibility. Absolutely. Is that true? I think it's absolutely true. I think the government was also, because the . . . Keep in mind, Mr. Dela Cruz's first language was not English. And, anything that was done here was not done by Mr. Dela Cruz. It was by counsel. So, counsel worked out an advocation. And, as you can read the transcript, at the time the plea was entered, Mr. Dela Cruz read what was written out, and basically acknowledged his agreement and his role at that time. He adopted, or counsel adopted, what the government's position was, that he was basically to be a lookout at the time. And, not only a lookout, in the defendant's submission, sentencing submission, indicated not only lookout, but he was a driver, because he was the one who drove Velez to the alleged scene and would be driving him back. So, I don't know anything more that someone would have to acknowledge than what Mr. Dela Cruz acknowledged. And, indeed, at the time of sentencing, counsel said to the judge, Judge, ask him any questions you'd like about it. And, the court refused. The government agreed. Did he have an opportunity to testify at the Fatico hearing? He didn't testify. Did he have an opportunity to testify? As to what? Anything he wanted to dispute. You're saying the court didn't ask him any questions about what he did, but the Fatico hearing focused in part on the Velez statement that your client had engaged in drug dealing in the past. That's something different. That should have nothing to do with acceptance of responsibility as to the crime he pleaded to. He acknowledged what he did. There's no fact that someone's going to point to that he had something else to do at the robbery. He was not armed. He was not to confront the people or go into their vehicle in this fantasy robbery at all. So, there's nothing there whatsoever. What was he going to testify to? And, there was nothing to testify to because we finally got the tape. And, it shows that what was said in the pre-sentence was absolutely wrong. All that was said was he may cry like a baby, like a sissy I think. Which, what can that mean? The man lost all his drugs or something? And, that had nothing to do with his role in the offense. And, it was not something that should be taken into account. And, it's so important that the pre-sentence report not have something improper in it because the Bureau of Prisons uses what's in there, right, into determining what kind of an institution someone would be put into. And, if it were before any other court, I suggest that this, I would not be up here arguing this. To be clear, it was acceptance of responsibility agreed upon by the government. No, the government was not objecting. The government did not say he's not accepting responsibility because he did. There's nothing more that we ask of someone when he enters a plea. And, the elocution was accepted by the court, recommended by the magistrate, took the plea, and the sentencing memo indicated driver and a lookout. That was the government's position, lookout and driver and lookout. So, there's nothing there. Is that, my timer's running out already? Your time has run out. Run out, okay. I'll save the second point. You've reserved three minutes of rebuttal. Right. Mr. Idalla. Mr. Idalla, why don't you sit over here. May it please the court, Noah Solowaychuk on behalf of the United States. With respect to the acceptance of responsibility issue, Judge Forrest's decision that the defendant was not entitled to the reduction for acceptance of responsibility was supported by the record and should be affirmed. Under section 3E1.1 of the sentencing guidelines, a district court is directed to consider whether the defendant truthfully admitted the conduct comprising the offense of conviction and truthfully admitted or did not falsely deny any additional relevant conduct. Can I ask you specifics about that? In your sentencing memo, you said that he was acting solely as the driver for the robbery, right? In our sentencing memo, Your Honor. Page 6. Yes. You're familiar with that, right? I'm familiar with it. We noted, Your Honor, that on the day of the robbery, the defendant was solely to act as the driver. That is correct. Let's just talk about the violence. Was he going to commit any violence? Did you ever— We never took that position, Your Honor. You never took that position. We also noted in our sentencing submission that the defendant had other responsibilities, which included taking part in the planning of this offense, and we noted in our response— Let's just talk about the violence, though, okay? And even Velez said, of course, at the federal hearing, he wasn't going to go into the van as others were supposed to do with guns drawn and actually commit the robbery. Yes. And he said he was solely to transport the drugs. That's what Velez said, right? That is correct, Your Honor. And then the district court, in the sole reason for her concluding that he wasn't going to get acceptance, was he misrepresented that he was just a lookout and a driver, right? Well, Your Honor, I think the district court gave other reasons as well. Well, I've got the transcript, 146 to 147. I know that she considered the prior drug dealing and splitting up the proceeds for the sentencing factors, but I'm just talking about 3E1.1, the acceptance responsibility. The violence aspect was the only reason she gave. Do you agree with that, Matt? I'm not sure I do agree with that, Your Honor. She pointed, in addition to the defendants on sentencing submissions at pages 5 and 6, where he indicated he was going to be a lookout, and, I mean, he didn't take responsibility for his role with respect to planning. He did say he was present. He said he was present, but, I mean, he also took the position that he was going to get a $15,000 fee. He affirmatively represented that to the district court, and later on in the sentencing the district court didn't credit that at all in imposing sanctions. That's fine in the 3553A factors, and she mentions that specifically, that she's including that, and there's no challenge to that. But I'm just talking about the acceptance responsibility. It appears to me the only reason that she denied it was this mischaracterization of his role at the robbery, when he said, I'm a driver and a lookout, and even Velez at Fatico said he wasn't going to do any violence at the robbery, right? She said that he was more heavily involved in this than just being a driver and lookout. It's absolutely clear that the defendant was heavily involved in this. He was involved in the planning. He participated in at least a couple of the meetings, and when you can repeatedly say, I'm a driver and a lookout, I'm a driver and a lookout, I'm only going to get a fee, and you have a full-blown Fatico hearing where it comes out that really you're much more involved in this than just that, the district court is entitled to a full unraveling. There were tapes of it all, right? These are all recorded conversations, so he heard those ahead of time. He didn't deny that he was there when there was planning going on, did he? He didn't deny that he was there when there was planning going on, but repeatedly in his sentencing submissions he emphasized that he was not part of the actual robbery crew, which is minimizing because even if you're just the driver, when you say you're not part of the actual robbery crew. What did he say in his plea allocution? His plea allocation, he said he was the lookout and the driver, and he mentioned that he had been at a planning meeting. And the magistrate judge said it was going to be a robbery, right? And he said yes. Yes. So what was the basis for the denial of acceptance responsibility? A district court, when it comes to the offense of conviction, a district court is entitled to a full unraveling of the facts, to a full and candid explanation. When you have a defendant come forward repeatedly and say, I'm a lookout and a driver. I'm playing this minimal role. I wasn't part of the actual robbery crew. And the government responded to that in our own submission saying that he was understating his role. We said that, you know, yes, on the day of the robbery he's a lookout and a driver, but he has other responsibilities. And the district court, at the end of the day, taking— Let me quote you from your sentencing submission. The reason you gave him the lowest guideline range of all the defendants, and you're explaining that in the last six pages of your sentencing submission, why are we giving him the best break here? This was due to the fact that the government determined that Delacruz's offense conduct, while quite serious, was less serious than that of his co-defendants because Delacruz was solely to act as the driver for the robbery. That's what you wrote, right? That's correct. And earlier in that sentencing submission, we did note that while the defendant was claiming, you know, he was only going to be a lookout, this characterization understates Delacruz's role substantially. Delacruz, in fact, like all of his six other co-defendants, was an integral part of the robbery crew. At sentencing, we also— Yes, and that says Delacruz's role was to act as a driver of the one of the vehicles that would carry the stolen narcotics. Furthermore, Delacruz was present for crucial planning meetings leading to the planned robbery. He never denied that, though, did he? No. And there's no dispute that the defendant admitted that he was going to be a driver and a lookout, and he didn't deny that he was at some planning meetings. But when you repeatedly say, I'm a lookout, I'm getting a driver's fee, I would also note, Your Honor, that the Second Circuit case law says that this court— first of all, the finding has to be without foundation. That's a very high standard. And second of all, this court can affirm even if it finds some other basis in the record. It doesn't have to be the basis provided by the district court. But we do believe the basis provided by the district court is more than adequate to affirm— Did you ever seek denial of acceptance? We did not. Even the third point? We did not. Did the district court take into account Velez's— excuse me—Velez's statement that Delacruz had been involved in other drug dealing in connection with the acceptance of responsibility decision? I believe the district court only took that into account as a 3553-AA factor, Your Honor.  No. I think the issue is when it comes to the offense of conviction, you have to provide a complete explanation of what you did. And when you get up repeatedly and say, I was a lookout, I was a lookout, and you affirmatively represent, I was going to get a $50,000 fee, the court holds a full-blown fatico hearing and decides, no, you were more involved than that. You were the go-to man for Mr. Velez. You were involved in planning. And also, you weren't going to just get— Go-to for what? Go-to for driving. And also, he was going to be involved in selling the drugs, which the district court said she credited Mr. Velez on that. And he repeatedly claimed pre-fatico hearing, post-fatico hearing, I'm a lookout who gets a $15,000— Maybe I misunderstood what you just said earlier in answer to just Kearse's question. I thought you said that the district court did not take the selling of narcotics into account. My apologies. I may have misunderstood the question. I don't think the district court took into account the prior narcotics trafficking that he had been involved in, which was one of the subjects of the fatico hearing, in determining acceptance of responsibility. But I think with respect to what he did on the offense of conviction, which the district court is to consider in deciding whether acceptance of responsibility is appropriate, it appears that she did take that into account when deciding that he hadn't fully owned up to all of his conduct. Where is that in the record? Well, it's not in—she does quote—she does cite to his sentencing submission— You say it's not in the record. No, no, no, it is in the record. She mentions at the sentencing, an imposing sentence, that she's crediting Mr. Velez. She doesn't say it, I will be clear. She doesn't say it when she decides whether or not he's getting acceptance of responsibility. Very simple question. Where is it in the record? Take your time. It said, A, 160 to 161. I do credit Velez's testimony that you were a close friend of his, you were involved in the narcotics trade, and that you understood that there would be 16 kilos of cocaine and 5 kilos of heroin on the other end of this, and that you believed you stood to gain from that. And he, during the court's pre-sentence at some point, he disputes this? He disputes this twice. He disputes it before the fatico. He says, I was only going to receive a fee. After the fatico, he goes further. He doubles down, and he says, I was only going to receive a $15,000 fee. And that was his position. And Judge Forrest ultimately didn't believe that that was true. She said that on the record at sentencing, and when it comes to the offensive conviction, you have to really provide a full and candid explanation of your full role. That didn't happen here. The standard is without foundation, and here there is an adequate basis in the record to affirm, Your Honor. But she said that you believed you stood to gain from the theft of the 16 kilos of cocaine. I mean, he never said he wasn't going to get paid for his involvement here in some way, right? His position was, I'm just going to get a flat fee. I'm not going to be involved in selling the drugs. She goes on to say, I also find significant a fact that we've not talked about, which is that your car had in an empty suitcase an empty fabric bag, which are tools of the trade of robbers who expect to take home fruits of robbery, not just deposit into their pockets certain money that may be paid. If you are paid large sums of money, or certainly if you are paid in the form of cocaine and heroin. There was no gun in his car? There was no gun. The government's not taking the position that Mr. Delacruz that day was going to be involved in the violence, just to be very clear about that. But he played a role in the actual robbery, because every person who's involved in these things plays a role. And when you keep telling the district court over and over, I'm a non-actual robber, I wasn't going to be part of the actual robbery crew, that's the type of minimization. She didn't take his plea though, right? A magistrate judge took the plea. But she accepted the plea. Unless the court has any further questions, we'll rest on our submission. Mr. O'Donnell. First of all, we should realize that contrary to the mistake that the court made, district court, Mr. Delacruz wasn't saying anything. This is either what counsel wrote for his allocution in conjunction with the prosecution, or what counsel wrote in the sentencing memo. And there's nothing wrong. So the judge thought that Mr. Delacruz- That's a separate issue. But I just want to be clear, because the court found, erroneously, that Mr. Delacruz had talked to the probation officer during the interview as to the crime. That was totally false. All that happened is what usually happens. Counsel says, well, insofar as the crime, he relies on his allocution. So the judge was absolutely wrong. Also, the judge was wrong in saying that he just said he was a lookout. Totally wrong. So she was wrong in both instances there. And everyone's talking about Mr. Delacruz. He was not, when you're talking about part of the planning, as the court conceded, he was present, yes, as Your Honor pointed out, but the person doing all the talking on that side, other than the agents, was Mr. Velez, not Mr. Delacruz. And he didn't deny his involvement. And all you have to do is indicate your involvement. So as I understand it, the dispute is really about what he admitted with respect to his role, and he arguably minimized his role in connection with that particular robbery. No. What did he minimize? He admitted exactly what the government said was his position, as the court pointed out here. So he didn't minimize anything, nor did counsel minimize it. Well, counsel only did, and this is where I think the court may have penalized Mr. Delacruz because counsel pointed out certain things. It was his counsel, though. Who was? His counsel. His counsel. So what are you supposed to do, not rely on what the lawyer does when he objects to the PSR? No, no, no. What I'm saying, it's saying that Mr. Delacruz himself said it. We've got to deal with the reality of what goes on. Agreements between government. Let me give you a hypothetical. If you had said, if you had said, as his counsel, I dispute every part of this PSR and it's wrong, and he said nothing, wouldn't that be a basis for refusing the acceptance of responsibility point? No. So you say that unless the defendant himself or herself disputes it. No, no. So what's your position? In other words, there's a tape. What's quoted in the PSR is wrong. It's proven. You raised that. The court objected to counsel bringing up the due process violation, and I think the example I gave is the best example I can think of. If that's not a violation of due process, then I wish someone would tell me an example. The example I gave about someone getting up and talking about seeing the guy over a period of years ago, no time, no place, on different occasions murdering people, dismembering them, incinerating the body and throwing it in the ocean. Now the court says, as I said, he took into consideration. Make no doubt about it, I'm taking this into consideration. If that's not a violation of due process, I don't know what it is. And to criticize counsel for raising that is incomprehensible. Thank you very much. Thank you very much. We'll reserve the decision.